# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | 3:08-CV-0386-BES (VPC) |
| Plaintiffs, | |
| vs. | **ORDER** |
| 753.95 ACRES OF LAND, MORE OR LESS, IN WASHOE COUNTY, NEVADA, AND INCLINE LAKE CORPORATION, et al., | |
| Defendants. | |

On June 12, 2009, this Court held its monthly discovery status hearing in this action and considered defendant, Incline Lake Corporation's ("ILC") motion to amend order concerning inadvertent disclosure of privileged information (#202). Having met and conferred in advance of the hearing, there remained only four documents in dispute (#225). The Court denied ILC's motion to expand the order re: inadvertent disclosure of privileged information (#108), but construed ILC's motion as a motion for protective order. *Id.* The Court entered its order concerning Exhibits A-4, A-9, and A-11, but took under submission its decision concerning Exhibit A-20, attached to the United States' response in opposition ILC's motion (#210, #210–2, Ex. A). Exhibit A-20 is described as documents relating to "Terra Firma's fee arrangement that is contingent upon the outcome of this litigation." *Id.*

### I. Procedural History

In 2004, Terra Firma, an interested party, contracted with ILC as a consultant to evaluate preservation of the Incline Lake property through a conveyance to the United States Forest Service pursuant to the Southern Nevada Public Land Management Act ("SNPLMA") (#139). Terra Firma describes itself as a "small, land use planning consulting firm" and as a "business [ ] focused on facilitating land conservation programs, including conservation easements on agricultural and recreation properties, transfer of development rights programs, and conveyances of land to public agencies, to help

landowners achieve their long term land conservation strategies." *Id.* In December 2008, the United States issued a subpoena from this court seeking the production of documents from Terra Firma, a non-party. *Id.* Because many of the documents requested were also the subject of a document production request to ILC, the parties agreed to hold the subpoena in abeyance until ILC completed its production, which included thousands of documents from Terra Firma. *Id.*

However, in its request for production of documents to ILC, the United States requested production of "any and all contracts or agreements" between Terra Firma and ILC. *See* United States' status report (#113) and ILC's status report (#114). ILC's position was that the consulting agreement between ILC and Terra Firma had nothing to do with the central issue in this proceeding, which is the value of the property at the time of taking. *Id.* At the January 28, 2009 discovery status conference, ILC reiterated its position that the relationship between ILC and Terra Firma had no bearing on the valuation of the property, particularly since both sides have retained experts who will testify about property value.[1] ILC contended that Terra Firma had submitted all of its information to ILC's appraiser for the purpose of forming his expert opinion, that the appraiser was not acting under Terra Firma's direction, and that the United States appeared to be engaged in an attack against Terra Firma through this litigation. Terra Firma advanced similar arguments at the hearing and expressed concern that the United States' true motive was to undermine Terra Firma in other land acquisition projects involving federal lands.

The United States countered that production of the consulting agreement was warranted because it was the impetus for communications between ILC and Terra Firma and characterized Terra Firma as a key player in the land acquisition agreement and in ascribing a value to the property. Moreover, Terra Firma identified experts that ILC has subsequently relied upon for its opinion of value and contended that those experts have a financial incentive in the outcome of the case. This court ordered the consulting agreement be produced *in camera*, and after review, exercised its discretion and ordered that it not be produced on the ground that its production would not lead to the discovery of admissible evidence (#128). The United States did not object to the court's order or seek reconsideration.

---

[1] The court reviewed the tape recordings of the January 28, 2009 and June 12, 2009 hearings.

1    In early January 2009, this court approved an order concerning inadvertent disclosure of privileged information, which provides a mechanism for the return of such inadvertently disclosed privileged documents (#108). Thereafter, ILC produced over 250,000 pages of documents, and inadvertently produced documents it characterized as documents unrelated to the subject matter of this case (#202). Among those documents is Exhibit A-20, which consists of September 2007 email correspondence concerning Terra Firma's fee arrangement with ILC. Prior to the June 12, 2009 hearing, the parties and Terra Firma filed briefs concerning the disputed documents, including Exhibit A-20 (#s 202, 210, 215 & 217).

ILC contended that given the massive number of documents produced, the inadvertent disclosure or "claw back" order should be expanded to include documents that would not lead to the discovery of admissible evidence, such as Exhibit A-20 (#202). Terra Firma joined in that argument, but also asserted that since Exhibit A-20 relates to the consulting agreement this court had earlier ordered was not discoverable, Exhibit A-20 is likewise not discoverable (#217). The United States' position, with which the Court ultimately agreed, was that documents subject to relevancy objections should not be given the "claw back" protections afforded to those subject to the attorney-client privilege or the work product doctrine (#210). The Court then considered the dispute in the context of a motion for protective order, which requires the objecting party to show good cause why the document should be protected from discovery. Fed.R.Civ.P. 26(c).

During oral argument at the June 12, 2009 discovery status conference, the United States noted that when the court issued its prior order that the consulting agreement would not be produced, it did not appreciate the implications of Terra Firma's financial stake in the outcome of the litigation, and the primary reason advanced for nondisclosure of the consulting agreement was it had nothing to do with the value of the property. In the interim, however, the implications of the contingent financial relationship between ILC and Terra Firma have become highly relevant. If a Terra Firma representative testifies concerning the subject property, Terra Firma's financial stake in the outcome of the litigation is relevant to that witness's credibility, and the jury is entitled to this information. Moreover, Rule 26(c) does not require the United States to demonstrate the document is relevant; rather, it is ILC and Terra

3

1  Firma's burden to establish good cause to prevent its disclosure. Since they failed to meet their burden
2  and show the harm that will result from disclosure, the document should be produced.
3       ILC and Terra Firma contended that the Court had already reviewed the consulting agreement
4  itself, which spelled out the terms of Terra Firma's compensation, and based upon that review, the Court
5  found good cause to prohibit disclosure of the agreement (#108). Terra Firma noted that the United
6  States failed to object to the court's order or to seek reconsideration and reiterated its position that the
7  value of the property – not Terra Firma's compensation – is the central issue in this condemnation
8  action.
9       The Court has carefully reviewed the recordings of the January 28 and June 12, 2009 discovery
10 status conferences and the papers relevant to the dispute concerning the consulting agreement and
11 Exhibit A-20. When the court originally ordered that the consulting agreement not be produced, ILC
12 and Terra Firma's central argument against disclosure was that it was irrelevant to the real issue in this
13 case, namely, the value of the subject property at the time of the taking. As the case has progressed, the
14 court has gained a fuller understanding of Terra Firma's role in the land acquisition agreement and the
15 interplay among ILC, Terra Firma, and ILC's potential experts and appraiser. The court is now
16 convinced that the consulting agreement is relevant to the credibility of Terra Firma representatives who
17 will testify at trial. It is undisputed that in condemnation actions, "[t]he modern trend favors a broad rule
18 of admissibility; and any evidence is admissible which might reasonably influence a willing seller and
19 a willing buyer." *United States v. 100 Acres of Land,* 468 F.2d 1261, 1267 (9th Cir. 1972) (citations
20 omitted). Terra Firma's contention that disclosure of the consulting agreement and Exhibit A-20 raises
21 legitimate concerns that Terra Firma's business plan and work on behalf of other landowners may be
22 prejudiced, but disclosure, albeit inadvertent, has already occurred and cannot be undone. Nevertheless,
23 Terra Firma's concerns can be properly addressed through a stipulated protective order to protect
24 confidential documents parties and non-parties consider to be confidential business or financial
25 information.

4

Based upon the foregoing, and for good cause appearing, the court orders as follows:

1. Exhibit A-20 and the consulting agreement between Terra Firma and ILC shall be produced to the United States;

2. Good cause exists that the above-described documents and any other documents relating to the consulting agreement between Terra Firma and ILC shall be produced;

3. The court's February 2, 2009 minute order (#128) is VACATED;

4. The court finds good cause exists to seal Exhibit A-20 (#210-2), and the Clerk of Court shall seal that exhibit; and,

5. The parties shall submit a stipulated protective order to protect the confidentiality of information and documents the parties obtain in this case, and shall submit that proposed order no later than **Friday, July 24, 2009.**  Attached to this order is a form of stipulated protective order that the parties may consider.

**IT IS SO ORDERED.**

DATED:   July 10, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

|  |  )  | 3:0 -CV- |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | **STIPULATED PROTECTIVE ORDER** |
| Defendants. | ) | |

In order to protect the confidentiality of confidential information obtained by the parties in connection with this case, the parties hereby agree as follows:

1. Any party or non-party may designate as "confidential" (by stamping the relevant page or other otherwise set forth herein) any document or response to discovery which that party or non-party considers in good faith to contain information involving trade secrets, or confidential business or financial information, subject to protection under the Federal Rules of Civil Procedure or Nevada law ("Confidential Information"). Where a document or response consists of more than one page, the first page and each page on which confidential information appears shall be so designated.

2. A party or non-party may designate information disclosed during a deposition or in response to written discovery as "confidential" by so indicating in said response or on the record at the deposition and requesting the preparation of a separate transcript of such material. Additionally a party or non-party may designate in writing, within twenty (20) days after receipt of said responses or of the deposition transcript for which the designation is proposed, that specific pages of the transcript and/or specific responses be treated as "confidential" information. Any other party may object to such proposal, in writing or on the record. Upon such objection, the parties shall follow the procedures described in paragraph 8 below. After any designation made according to the procedure set forth in this paragraph,

the designated documents or information shall be treated according to the designation until the matter is resolved according to the procedures described in paragraph 8 below, and counsel for all parties shall be responsible for making all previously unmarked copies of the designated material in their possession or control with the specified designation.

3. All information produced or exchanged in the course of this case (other than information that is publicly available) shall be used by the party or parties to whom the information is produced solely for the purpose of this case.

4. Except with the prior written consent of other parties, or upon prior order of this Court obtained upon notice to opposing counsel, Confidential Information shall not be disclosed to any person other than:

(a) counsel for the respective parties to this litigation, including in-house counsel and co-counsel retained for this litigation;

(b) employees of such counsel;

(c) individual defendants, class representatives, any officer or employee of a party, to the extent deemed necessary by Counsel for the prosecution or defense of this litigation;

(d) consultants or expert witnesses retained for the prosecution or defense of this litigation, provided that each such person shall execute a copy of the Certification annexed to this Order as Exhibit "A" (which shall be retained by counsel to the party so disclosing the Confidential Information and made available for inspection by opposing counsel during the pendency or after the termination of the action only upon good cause shown and upon order of the Court) before being shown or given any Confidential Information and provided that if the party chooses a consultant or expert employed by [THE CORPORATE DEFENDANT] or one of its competitors (as listed on Appendix A), the party shall notify the opposing party, or designating nonparty, before disclosing any Confidential Information to that individual and shall give the opposing party an opportunity to move for a protective order preventing or limiting such disclosure;

(e) any authors or recipients of the Confidential Information;

(f) the Court, Court personnel, and court reporters; and

1    (g) witnesses (other than persons described in paragraph 4(e)). A witness shall sign the Certification before being shown a confidential document. Confidential Information may be disclosed to a witness who will not sign the Certification only in a deposition at which the party who designated the Confidential Information is represented or has been given notice that Confidential Information shall be designated "Confidential" pursuant to paragraph 2 above. Witnesses shown Confidential Information shall not be allowed to retain copies.

5. Any persons receiving Confidential Information shall not reveal or discuss such information to or with any person who is not entitled to receive such information, except as set forth herein.

6. No party or non-party shall file or submit for filing as part of the court record any documents under seal without first obtaining leave of court. Notwithstanding any agreement among the parties, the party seeking to file a paper under seal bears the burden of overcoming the presumption in favor of public access to papers filed in court.

7. A party may designate as "Confidential" documents or discovery materials produced by a non-party by providing written notice to all parties of the relevant document numbers or other identification within thirty (30) days after receiving such documents or discovery materials. Any party or non-party may voluntarily disclose to others without restriction any information designated by that party or non-party as confidential, although a document may lose its confidential status if it is made public.

8. If a party contends that any material is not entitled to confidential treatment, such party may at any time give written notice to the party or non-party who designated the material. The party or non-party who designated the material shall have twenty-five (25) days from the receipt of such written notice to apply to the Court for an order designating the material as confidential. The party or non-party seeking the order has the burden of establishing that the document is entitled to protection.

9. Notwithstanding any challenge to the designation of material as Confidential Information, all documents shall be treated as such and shall be subject to the provisions hereof unless and until one of the following occurs:

(a) the party or non-party claims that the material is Confidential Information withdraws such designation in writing; or

(b) the party or non-party who claims that the material is Confidential Information fails to apply to the Court for an order designating the material confidential within the time period specified above after receipt of a written challenge to such designation; or

(c) the Court rules the material is not confidential.

10. All provisions of this Order restricting the communication or use of Confidential Information shall continue to be binding after the conclusion of this action, unless otherwise agreed or ordered. Upon conclusion of the litigation, a party in the possession of Confidential Information, other than that which is contained in pleadings, correspondence, and deposition transcripts, shall either (a) return such documents no later than thirty (30) days after conclusion of this action to counsel for the party or non-party who provided such information, or (b) destroy such documents within the time period upon consent of the party who provided the information and certify in writing within thirty (30) days that the documents have been destroyed.

11. The terms of this Order do not preclude, limit, restrict, or otherwise apply to the use of documents at trial.

12. Nothing herein shall be deemed to waive any applicable privilege or work product protection, or to affect the ability of a party to seek relief for an inadvertent disclosure of material protected by privilege or work product protection.

13. Any witness or other person, firm or entity from which discovery is sought may be informed of and may obtain the protection of this Order by written advice to the parties' respective counsel or by oral advice at the time of any deposition or similar proceeding.

**CERTIFICATION**

I hereby certify my understanding that Confidential Information is being provided to me pursuant to the terms and restrictions of the Protective Order dated _____, in _____, Civil No. _____. I have been given a copy of that Order and read it. I agree to be bound by the Order. I will not reveal the Confidential Information to anyone, except as allowed by the Order. I will maintain all such Confidential Information – including

1  copies, notes, or other transcriptions made therefrom – in a secure manner to prevent unauthorized
2  access to it. No later than thirty (30) days after the conclusion of this action, I will return the Confidential
3  Information –- including copies, notes or other transcriptions made therefrom – to the counsel who
4  provided me with the Confidential Information. I hereby consent to the jurisdiction of the United States
5  District Court for the purpose of enforcing the Protective Order.
6  DATED:_____.
7  _____

**EXHIBIT "A"**